

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EWS:SHP                                      *271 Cadman Plaza East*
F. #2025R00230                               *Brooklyn, New York 11201*


January 26, 2026


By ECF


Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Derrick Reynolds, Jr.
>        Criminal Docket No. 25-261 (EK)

Dear Judge Komitee:

The government respectfully submits this letter in advance of the defendant Derrick Reynolds, Jr.'s sentencing, which is currently scheduled for February 9, 2026. On October 2, 2025, the defendant pled guilty before Chief Magistrate Judge Vera M. Scanlon to one count of possessing contraband in prison, in violation of 18 U.S.C. § 1791(a)(2), and the plea was accepted by the Court on January 8, 2026. For the following reasons, the government respectfully submits that a Guidelines sentence of 6 months' imprisonment, consecutive to the sentence the defendant is already serving, is warranted in this case.

I.    Factual Background

In February 2023, the defendant was detained at the Metropolitan Detention Center in Brooklyn (the "MDC") on pending racketeering and drug distribution charges in the Southern District of New York. See United States v. Derrick Reynolds, et al., No. 23-CR-38 (ER) (S.D.N.Y.). While incarcerated and pending sentencing on the Southern District case, the defendant received contraband—marijuana—from his brother and co-defendant, Jerome Parsons, during a social visit on February 17, 2025. The transaction was observed as it occurred by MDC staff members, the social visit was terminated, and the contraband was discovered shortly thereafter.

The provision of contraband by Mr. Parsons, and receipt by the defendant, was captured by surveillance cameras at the MDC. On the footage, Mr. Parsons can be seen arriving to the MDC, checking in with the front desk, and then utilizing the restroom before being escorted into the west visiting room. After Mr. Parsons entered the visiting room, he can be seen in surveillance footage sitting across from the defendant, with a small white table between the two individuals. At approximately 1:45pm, Mr. Parsons can be seen placing something he is holding

in his right hand onto the table, and then covering the item with a plastic snack bag and placing a water bottle next to it, as seen in the below still image taken from MDC surveillance footage:



Mr. Parsons and the defendant continued to speak after Mr. Parsons placed the object on the table, until approximately 1:53pm. At that time, a group to the defendant's right got up, ending their visit, and the defendant seized the opportunity to pick up the object and place it inside his prison attire through a hole in the left side, as seen in the below still image taken from MDC surveillance footage:



An MDC staff member was monitoring the surveillance footage in real-time from an office just outside the visiting room.  The officer observed the defendant's awkward behavior, including reaching inside his pants and appearing to squat and gyrate.  Suspecting that the defendant might be attempting to smuggle contraband, the officer and other MDC staff ended the social visit and escorted the defendant to the visual search room.

The defendant initially denied being in possession of any contraband when questioned by the officer, but admitted to the conduct after the officer described what he had seen on the surveillance footage.  The defendant explained that the item was in his anal cavity.  The defendant was taken by the officer to the TEK84 Body Scanner, which showed an object in the vicinity of the defendant's rectum.  The defendant subsequently removed the object and provided it to a BOP staff member.  The object was found to be a green leafy substance, wrapped inside saran wrap, and further placed inside a condom.  The green leafy substance was subsequently determined to be 23 grams of marijuana.

II.    Procedural History

On August 15, 2025, the grand jury returned an indictment charging the defendant and Mr. Parsons with one count each of possessing contraband in prison and providing contraband in prison, respectively.  See ECF No. 1.  The indictment was unsealed on August 28, 2025, following the arrest of Mr. Parsons, and the defendant was arraigned on September 11, 2025.  See ECF docket entry dated September 11, 2025.  On October 2, 2025, the defendant pled guilty before Chief Magistrate Judge Vera M. Scanlon pursuant to a plea agreement.  See ECF No. 24.  The plea was accepted by the Court on January 8, 2026.  See ECF docket entry dated January 8, 2026.

With respect to the defendant's separate charges in the Southern District of New York, on January 8, 2025, the defendant pled guilty to participating in a racketeering conspiracy and conspiracy to distribute narcotics.  See PSR ¶ 28; see also United States v. Derrick Reynolds, et al., Docket No. 23-CR-38 (ER) (S.D.N.Y.), Docket Entry dated January 8, 2025.  On July 22, 2025, the defendant was sentenced by Judge Edgardo Ramos to 144 months in custody, to be followed by four years of supervised release.  United States v. Derrick Reynolds, et al., Docket No. 23-CR-38 (ER) (S.D.N.Y.), ECF No. 153.

III.    Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable.  [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).  Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

>    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."  18 U.S.C. § 3582(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider."  United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).  Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  Thus, the Court should first calculate the applicable Guidelines range and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV.    Guidelines Calculation

The government agrees with the United States Probation Department's ("Probation") calculation of the defendant's offense level in the PSR as set forth below:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2P1.2(a)(3)) | 6 |
| Minus: Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a)) | -2 |
| Total Offense Level: | 4 |

See PSR ¶¶ 13-21.

The government agrees with Probation that the defendant falls within Criminal History Category VI and that the applicable range of imprisonment is 6 to 12 months.  See PSR ¶ 60.

V.    A Sentence within the Applicable Guidelines Range Is Necessary to Deter the Defendant and Reflect the Seriousness of his Crimes

The government respectfully submits that a custodial sentence of 6 months, within the Guidelines range of 6 to 12 months' imprisonment, is necessary to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide adequate deterrence to the

defendant and to other federal inmates.  See 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B).  The custodial sentence should run consecutively to the defendant's undischarged term of imprisonment.  See PSR ¶ 60.

The nature and circumstances of the instant offense are serious and deserving of a significant sentence.  As the Court is aware, the possession of contraband at the MDC poses a grave security concern for both inmates and correctional officers.  The marijuana that the defendant possessed at the MDC would have caused disorder had he not been caught immediately after receiving it.  In particular, although less obviously dangerous than an improvised weapon or some other controlled substances, marijuana helps fuel the illicit prison economy, which itself often leads to violence among inmates.  This would have impacted both the defendant's fellow inmates, who would bear the brunt of the negative impacts of the illicit prison economy, and MDC correctional officers, who would be called upon to respond to incidents of violence, risking their own safety in the process.  The Court's sentence should reflect both the seriousness of this offense and the importance of maintaining the safety and security of the MDC.

The need for deterrence and promotion of respect for the law is especially strong in the case of a defendant such as Reynolds, who has consistently committed violent acts both in and out of prison.  The defendant has prior convictions for robbery, attempted robbery, firearm possession, possessing crack cocaine with intent to distribute, and taking part in a racketeering and narcotics conspiracy.  See PSR ¶¶ 24-28.  Furthermore, as seen in this case, the defendant's criminal activity did not stop during his periods of incarceration.  The defendant received five disciplinary infractions over his time at the MDC, including for interfering with security devices, assaulting a fellow inmate, and refusing to obey orders.  See PSR ¶ 28.

Notwithstanding the above, the facts of this case warrant a sentence at the lower end of the applicable guidelines range.  A recent contraband case from our district, United States v. Jonathan Guerrero, et al., 25-CR-108 (NGG), helps illustrate this distinction.  In Guerrero, several defendants were involved in a complex scheme to smuggle a rope full of contraband, including a scalpel, a cell-phone charging cord and plug, two lighters, cigarettes, and the federally controlled substances MDMB-4en-PINACA, marijuana, and buprenorphine into the MDC.  See Guerrero, ECF No. 79 (Government's Sentencing Submission).  The scheme involved an inmate going to the "rec deck" at the front of the MDC to throw out a line, which would then be hooked to the rope containing the contraband.  Id.  Recovered audio recordings from a contraband cell phone showed the scheme involved a significant number of individuals both inside and outside of the MDC, and was envisioned as a money-making enterprise, including through the sale of 27 bags of marijuana.  Id.  The first defendant to be sentenced for that case, Jonathan Guerrero, was sentenced to 30 months in custody by Judge Garaufis.[1]

In the instant case, by contrast, the defendant received from his brother a quantity of marijuana which would be consistent with small-scale distribution.  No weapons or other controlled substances were exchanged, and there is no evidence that the contraband scheme involved anyone other than the defendant and Mr. Parsons.  Accordingly, the government

---

[1]    Although the judgment has not yet been docketed, the undersigned confirmed the sentence, which was handed down on December 10, 2025, with the AUSA prosecuting the case.

submits that a sentence of 6 months imprisonment, at the low end of the applicable guidelines range, to be followed by two years of supervised release, is appropriate in this case.

VI.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 6 months' imprisonment, consecutive to the sentence the defendant is already serving.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    _Stephen H. Petraeus_

Stephen H. Petraeus
Assistant U.S. Attorney
(718) 254-6352

cc:   Counsel of Record (by ECF)
      Maxine Marquez, U.S. Probation Officer (by email)